# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 15-CV-2312 (JFB)
_____

JUAN CARLOS URIBE,

Petitioner,

VERSUS

BRANDON SMITH,
SUPERINTENDENT, GREENE C.F.,

Respondent.

_____

**MEMORANDUM AND ORDER**
July 27, 2017
_____

JOSEPH F. BIANCO, District Judge:

On April 5, 2015, petitioner Juan Carlos Uribe ("petitioner") petitioned this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his arrest and indictment for vehicular manslaughter in the second degree. (Pet. for Habeas Corpus ("Pet."), ECF No. 1.) Petitioner was found guilty of vehicular manslaughter in the second degree (N.Y. Penal Law ("Penal Law") § 125.12), reckless endangerment in the second degree (Penal Law § 120.20), reckless driving (N.Y. V.T.L. ("V.T.L.") § 1212), driving while ability impaired by the combined influence of drugs or of alcohol and any drug or drugs (V.T.L. § 1192(4-a)), and speeding (V.T.L. § 1180(d)).[1] (Sentencing Tr., ECF No. 7-4 at 17-18.)

In this habeas petition, petitioner challenges his conviction of vehicular manslaughter in the second degree on the ground that the evidence was legally insufficient to establish his guilt for that charge. (Pet. 7.)[2]

---

[1] Petitioner was acquitted of manslaughter in the second degree (Penal Law § 125.15(1)), criminal negligence (Penal Law § 125.10), driving while ability impaired by drugs (V.T.L. § 1192(4)), and two counts of assault in the third degree (Penal Law § 120.00(2)).

[2] Although petitioner is no longer incarcerated (*see* ECF Nos. 11, 13), petitioner is still "in custody," as required for habeas relief, because he is under supervised release, which constrains his freedom. (Response to Court's Order, ECF. No. 14, at 1.) He is

1

I. BACKGROUND

A. Factual Background

The following facts are adduced from the petition and documents attached thereto, as well as from the state court and appellate record.

At approximately 2:20 a.m. on May 1, 2010, petitioner was travelling northbound on Glen Cove Road. (Tr. Testimony John Lapine ("Lapine T."), ECF No. 7-2, at 218.)[3] Petitioner was driving his black Nissan Murano, an SUV, at or above 70 miles per hour. (*Id*. at 216.) The road was "very dark" or "jet black dark" with only one weak light at the end of the street. (Tr. Testimony Gary Ferrucci ("Ferrucci T."), ECF No. 7-2, at 321; Tr. Testimony David Mazzola ("Mazzola T."), ECF No. 7-2, at 408.) Witness David Mazzola ("Mazzola") testified that he was going 53 miles per hour and that petitioner, who was going approximately 70 miles per hour, passed him at a quick pace. (*Id*. at 403.)

Petitioner did not swerve or attempt to break before crashing straight into a tree. (*Id*. at 403-04.) Petitioner was driving at a speed significant enough for his SUV to bounce off the tree and block traffic in the southbound lane on Glen Cove Road. (*Id*. at 404.) All of the lights in and on the vehicle went out, which made the vehicle nearly invisible to oncoming vehicles. (*Id*. at 403.) Despite the efforts of Mazzola, who had stopped beside the crash site to assist and to signal to oncoming cars about the crash, a taxi came upon the scene seconds after petitioner's vehicle crashed, and the taxi crashed into petitioner's disabled SUV. (*Id*. at 404.) The SUV moved a "little bit," and it was even harder to see for oncoming cars. (*Id*.) There is no evidence that the lights in and on the taxi went out as well. (*Id*.)

After a few more seconds, nineteen-year-old Pietro Gaudesi ("Gaudesi") came down the road on a motorcycle. (Tr. Testimony Peter Lake ("Lake T."), ECF No. 7-2, at 66.) Gaudesi slammed into the SUV "straight as a pin" while going at about the speed limit. (Mazzola at 409-10.) Upon impact, Gaudesi was launched over the SUV. (*Id*. at 409.) All of this occurred within fifteen seconds of the initial accident. (*Id*. at 415.)

The Emergency Medical Services ("EMS") arrived at the scene of the crime at around 2:30 a.m. (Tr. Testimony Jeffrey Matthews ("Matthews T."), ECF No. 7-2, at 146.) Detective Ferrucci ("Ferrucci") found Gaudesi lying prone and face down on the street. (Ferrucci T. 323.) Gaudesi was pronounced dead at 2:30 a.m. (*Id*. at 324.) Deputy Medical Examiner Brian O'Reilly ("Examiner O'Reilly") testified that Gaudesi suffered "multiple blunt force injuries," which included, *inter alia*, extensive injuries to his head, a significant laceration of his right lung, and right chest cavity. (Tr. Testimony Brian O'Reilly ("O'Reilly T."), ECF No. 7-3, at 516.) Examiner O'Reilly testified that the injuries to Gaudesi were consistent with a motor vehicle accident being the cause of death. (*Id*. at 517.) There were also trace amounts of hydrocodone and diehydrocodeine, two narcotics, found in Gaudesi's urine. (*Id*. at 520.) Significantly, the fact that the hydrocodone was found in his urine indicated that it was no longer actively affecting him at the time of the crime. (*Id*.)

Ambulance medical technician Jeffrey Matthews ("Matthews") testified that he "definitely" smelled a stench of alcohol coming from petitioner. (Matthews T. 148.)

---

currently receiving drug treatment for violation of his parole. (*Id*. at 1-2.)

[3] Citations to "T." refer to the trial court transcript.

2

Petitioner also had "heavily" slurred speech and was jumbling his words. (*Id.*) Officer Michael Marotta ("Marotta") testified that petitioner had bloodshot, glassy eyes and seemed "a little out of it." (Tr. Testimony Michael Marotta ("Marotta T."), ECF No. 7-2, at 93.) Later that morning, at 4:25 a.m., petitioner's blood was taken in North Shore University Hospital by hospital staff. (Tr. Testimony Frank Kassell ("Kassell T."), ECF No. 7-2, at 306.) The blood sample results revealed 0.02 of one per centum by weight of alcohol in petitioner's blood. (*Id.*) Doctor William Closson testified that the blood alcohol content ("BAC") likely in petitioner's body at the time of the crash was 0.05 to 0.06. (Tr. Testimony William Closson ("Closson T."), ECF No. 7-3, at 570.)

Having twice refused to give permission to the police to have his blood tested, petitioner was required by a court order to submit to a blood test. (Marotta T. 101-02.) His blood was drawn at 5:58 a.m. on May 1, 2010 by the Police Department. (*Id.* at 102.) The results of that blood test showed 47 MG/ML of Tramadol, 43 MG/ML hydrocodone, 8.5 MG/ML cyclobenzaprine, less than 0.10 MG/ML of trazodone, and his BAC to be 0.00. (Parties' Stipulation, Trial Tr. 306.) As of 5:58 a.m., the drugs found in his system were within therapeutic limit. (*Id.*)

Each of the drugs found in petitioner's body has a half life, which refers to the amount of time it takes for a drug to be reduced by one half. (Closson T., ECF No. 7-3, at 566.) Since most of the drugs and the alcohol found in petitioner's system had an "additive effect," in which the effects are intensified by mixing with one another, it was found that petitioner was under the combined influence of these drugs and alcohol when driving. (*Id.* at 574.)

The hydrocodone, which affects the central nervous system and can impair driving, was found to be at the "high end" of therapeutic levels. (*Id.* at 568.) Moreover, when hydrocodone is combined with alcohol, it has an "additive effect" on the individual. (*Id.* at 569.)

The Nissan Murano that petitioner was driving was found to have no defects to suggest that the crash was caused from anything else but petitioner's actions. (Kassell T. 233.) There was no evidence that petitioner was struck by another car prior to the crash, as he claimed, nor that any object or animal caused him to crash. (Mazzola T. 403-04; O'Reilly T. 517.)

Petitioner was convicted by a jury of vehicular manslaughter in the second degree (Penal Law § 125.12), reckless endangerment in the second degree (Penal Law § 120.20), reckless driving (V.T.L. § 1212), driving while ability impaired by the combined influence of drugs or of alcohol and any drug or drugs (V.T.L. § 1192(4-a)), and speeding (V.T.L. § 1180(d)), and sentenced on January 30, 2012 (Pet. 1). Following his conviction, petitioner appealed to the New York Supreme Court, Appellate Division, Second Department, on the following grounds: (1) there was insufficient evidence to establish petitioner's guilt for vehicular manslaughter in the second degree beyond a reasonable doubt; (2) the verdict of guilty for vehicular manslaughter in the second degree was against the weight of the evidence; and (3) the trial court erred in its original charge with respect to the definition of "cause of death." The Appellate Division affirmed petitioner's conviction on September 11, 2013. *See People v. Uribe*, 109 A.D.3d 844 (N.Y. App. Div. 2013). The New York Court of Appeals denied petitioner's motion for leave to appeal on May 29, 2014. *See People v. Uribe*, 23 N.Y.3d 969 (2014).

3

B. Procedural History

Petitioner filed a *pro se* petition for writ of habeas corpus on April 5, 2015. Petitioner challenges his conviction on the ground that the evidence was legally insufficient to establish his guilt of vehicular manslaughter in the second degree. (Pet. 6.) Respondent filed a memorandum of law in opposition on July 22, 2015. (Resp.'s Mem. Opp'n Writ Habeas Corpus ("Resp.'s Br.") ECF No. 7.) Petitioner submitted a reply to the opposition on October 8, 2015. (Pet.'s Mem. Reply Supp. Writ Habeas Corpus ("Pet.'s Reply Br."), ECF No. 10.) This matter is fully submitted, and the Court has fully considered the submissions of the parties.

## II. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court is required to apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which states, in relevant part,

> (d) An application for a writ of habeas corpus on behalf if a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). "'Clearly established Federal law means 'the *holdings*, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] petitioner's case." *Id.* at 413.

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). Additionally, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact . . . are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009)

4

(quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

### III. DISCUSSION

Petitioner challenges his conviction on the ground that the evidence was legally insufficient to establish his guilt of vehicular manslaughter in the second degree. For the following reasons, this Court concludes that petitioner's claim is without merit and denies the petition in its entirety.

A. Applicable Law

The law governing habeas relief on grounds of insufficiency of the evidence is well-established. A petitioner bears a "very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler v. Supreme Court of State of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997). If, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of facts could have found the essential elements of the crime beyond a reasonable doubt," a criminal conviction in state court will not be reversed. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see e.g. Flowers v. Fisher*, 296 F. App'x 208, 210 (2d Cir. 2008) (summary order); *Policano v. Herbert*, 507 F.3d 111, 115-16 (2d Cir. 2007); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002). A criminal conviction will stand so long as "a reasonable mind 'might fairly conclude guilt beyond a reasonable doubt.'" *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993) (quoting *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984)). Even when "faced with a record of historical facts that supports conflicting inferences [a court] must presume—even if it does not affirmatively appear on the record—that the trier of fact resolves any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).

When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). Accordingly, in this case, the Court looks to New York law for the elements of vehicular manslaughter in the second degree. Under the pertinent New York law, "[a] person is guilty of vehicular manslaughter in the second degree when he or she causes the death of another person, and operates a motor vehicle . . . and as a result of . . . the combined influence of drugs or of alcohol and any drug or drugs, operates such motor vehicle . . . in a manner that causes the death of [an]other person." Penal Law § 125.12(1). "Combined influence of drugs or alcohol" means that "the person's ability to operate such motor vehicle is impaired by the combined influence of drugs or of alcohol and any drug or drugs." V.T.L. § 1192(4-a). When a defendant's conduct is the actual cause of death of another and that defendant is found to have been operating a motor vehicle while intoxicated or impaired, a "rebuttable presumption [arises] that, as a result of . . . [the] combined influence of drugs or of alcohol and any drug or drugs, such person operated the motor vehicle . . . in a manner that caused such death . . ." Penal Law § 125.12. Once a rebuttable presumption arises, where there is a rational way for the factfinder to conclude that petitioner's intoxication led him to operate the vehicle in a way that resulted in another person's death, a jury can presume that a defendant driving while intoxicated caused the death. *People v. Drouin*, 115 A.D.3d 1153, 1154 (N.Y. Sup. Ct. 2014). For example, in *People v. Stickler*, a passenger struck his head and died after falling out of a car driven by a drunk driver who had briefly lost control of the car and swerved. *People v. Stickler*, 97 A.D.3d 854,

5

854-55 (N.Y. Sup. Ct. 2012). Upholding the conviction, the Appellate Division reasoned that the evidence that defendant was intoxicated and was operating a vehicle gave rise to a rebuttable presumption that his intoxicated driving caused the events that led to the other man's death. *Id*. at 856. The court went on to conclude that this presumption allowed a rational juror to conclude that defendant's intoxicated driving was the cause the other man's death, even if the *manner* of death was not foreseeable and the other man played a role in his own demise. *Id*.; *see, e.g. Drouin*, 115 A.D. at 1154; *People v. Rosado*, 168 A.D.2d 579 (N.Y. Sup. Ct. 1990); *People v. Gallo*, 133 A.D.3d 1088 (N.Y. Sup. Ct. 2015); *People v. Davis*, 112 A.D.3d 959 (N.Y. Sup. Ct. 2013).

More generally, causation has been found in a variety of situations in the more general criminal context. Indeed, it is well-settled law in New York that an unbroken chain of events caused by a defendant that leads to a victim's death establishes causation. *People v. DaCosta*, 6 N.Y.3d 181, 184 (2006). In *DaCosta*, for example, a police officer chased a defendant onto a highway and the police officer was struck and killed by a driver. *Id*. at 183. In upholding the conviction, the appellate court reasoned that the defendant set in motion the chain of events that caused the police officer's death. *Id*. at 185; *see also Matter of Anthony M.*, 63 N.Y.2d 270 (1984) (causation established where an elderly woman died of a heart attack several days after an attempted robbery); *People v. Prue*, 8 A.D.3d 894 (N.Y. Sup. Ct. 2004) (causation established where passenger choked on his own vomit after a crash).

B. Analysis

After reviewing the petition and the parties' submissions, and viewing the evidence in the light most favorable to the prosecution, the Court concludes that a rational trier of fact could have found the essential elements of the crime of vehicular manslaughter in the second degree beyond a reasonable doubt, and, thus, there is no ground for habeas relief with respect to petitioner's conviction. *See Jackson*, 443 U.S. at 319.

Strong evidence was presented at trial establishing petitioner "cause[d] the death of [Gaudesi]," and that he was "operat[ing] a motor vehicle . . . [and] as a result of [his] intoxication or impairment by the use of [] alcohol and any drug or drugs, operate[d] such motor vehicle . . . in a manner that cause[d] the death of [Gaudesi]." Penal Law § 125.12(1). The trial record establishes, and, petitioner does not dispute, that he drove the SUV himself, that he was impaired when he drove the SUV, and that his collision with a tree started a chain of events that led to the death of Gaudesi. (*See* Marotta T. 91 (petitioner admits he drove vehicle); *id.* at 93 (petitioner smelled like alcohol immediately after the accident and had glassy, bloodshot eyes); Mazzola T. 403-05 (petitioner drove into a tree without attempting to stop or swerve, there was no malfunction in petitioner's vehicle that caused the crash, no other vehicle hit the SUV before it crashed, and there was no apparent material reason that caused petitioner to swerve); Matthews T. 520 (petitioner smelled like alcohol immediately after the accident); Closson T. 568, 570 (testing indicated petitioner had a BAC of at least 0.05 or 0.06 at time of accident, there were several narcotic drugs in his system, and there were "additive effects" experienced by petitioner due to the combination of these drugs); O'Reilly T. 517 (Gaudesi's death was caused by collision with petitioner's SUV); Pet. 5-6 (petitioner admits his operated the vehicle "under the influence of a combination of drugs" and that he was driving at a speed of 70 miles per hour in a 40 miles per hour zone).) As such, there

6

was "a rebuttable presumption that, as a result of [petitioner's] impairment by the use of alcohol or a drug . . . [he] operated the motor vehicle . . . in a manner that caused [Gaudesi's] death." Penal Law § 125(12)(3).

Because there was a rebuttable presumption that causation existed, as a matter of law, the jury could have presumed that petitioner caused Gaudesi's death so long as there was a rational way for the factfinder to conclude that petitioner's intoxication led him to operate the vehicle in a way that resulted in another person's death. *Drouin*, 115 A.D.3d at 1154. The Court finds that there was a rational way for the factfinder to reach this conclusion. In particular, there was evidence, including witness testimony, that petitioner was driving over 70 miles per hour when the speed limit was 40 miles per hour, and that he drove through other lanes without turning at a bend in the road. (Mazzola T. 442; Lake T. 75; Marotta T. 89.) It was rational for the jury to conclude, based upon this information, that petitioner's intoxication led him to operate the vehicle in this way, and that petitioner's speeding and failure to follow the bend resulted in petitioner crashing the SUV, the taxi's subsequent collision with the SUV, and Gaudesi's subsequent collision with the SUV, and, thus, ultimately, in Gaudesi's death.

Despite this, petitioner argues that causation could not be established because Gaudesi's death was not reasonably foreseeable after the taxi pushed the SUV a distance down the street, and that Gaudesi could have avoided the accident by being "reasonably prudent," or alternatively, by "driving in the right hand lane." Pet. 6-a.

As a threshold matter, reasonable foreseeability is not an element of vehicular manslaughter in the second degree. *See Stickler*, 97 A.D.3d at 856; *Drouin*, 115 A.D. at 1154; *Rosado*, 168 A.D.2d at 579. Thus, the jury did not need to determine that Gaudesi's death was a reasonably foreseeable in order to find him guilty.

Moreover, it is irrelevant that Gaudesi may have been able to avoid the crash by using another lane or if he had not been potentially under the influence of drugs himself. The statute, which controls this Court's analysis, does not provide relief from criminal liability due to the negligent or reckless driving of another person, but instead focuses solely on the impaired driver and the effect he or she has on other drivers through his or her own driving. *See* Penal Law § 125.12. In other words, once the relevant elements can be established by a rational factfinder, what another driver could have done differently is irrelevant. Whether Gaudesi could have also stopped in time or taken another route is thus not only speculation, but it is irrelevant.

Ultimately, it is plain that petitioner operated a vehicle under the combined influence of drugs and alcohol and the death of Gaudesi resulted, a rebuttable presumption of causation therefore arose, and there was a rational way for the jury to conclude that petitioner's intoxication led him to operate his SUV in a way resulting in that death. As such, the jury was able to presume causation as a matter of law. *See Drouin*, 115 A.D.3d at 1154. As in *Stickler* and other analogous cases, although petitioner may not have known exactly *how* a death would occur, and there may have been acts outside of petitioner's control that contributed to the ultimate death, those additional facts do not impact petitioner's criminal liability under the circumstances. *See Stickler*, 97 A.D.3d at 854-55 (finding causation where passenger fell out of car); *DaCosta*, 6 N.Y.3d at 184 (upholding conviction where police officer chased defendant onto a highway and was struck and killed by a car).

7

Based on the foregoing, petitioner has failed to meet his "very heavy burden" in challenging the legal sufficiency of the evidence supporting his conviction. *See Einaugler*, 1098 F.3d at 840. Having viewed the evidence in a light most favorable to the prosecution, *Jackson*, 443 U.S. at 319, the Court concludes that a rational trier of fact could find beyond a reasonable doubt that petitioner was guilty of vehicular manslaughter in the second degree. Thus, petitioner's request for habeas relief is denied in its entirety.

### IV. CONCLUSION

For the foregoing reasons, the Court finds that the petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. Therefore, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of the Court shall close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Date:   July 27, 2017
        Central Islip, NY

*   *   *

Petitioner is proceeding *pro se*, 7 Clement Street Glen Cove, NY 11542. Respondent is represented by Sarah M. Spatt, Nassau County District Attorney's Office, on behalf of Madeline Singas, Nassau County District Attorney, 262 Old Country Road, Mineola, NY 11501.